# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **No. 11 CR 0778** |
| | ) | |
| **SRINIVASA ERRAMILLI,** | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Srinivasa Erramilli was convicted of abusive sexual contact without permission occurring while in the special aircraft jurisdiction of the United States (count II) in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506(1).[1] Before the court are Erramilli's motions for judgment of acquittal and for a new trial. For the reasons stated below, Erramilli's motions are denied.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 provides, in pertinent part, that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When requesting a judgment of acquittal under Rule 29, a defendant "'faces a nearly insurmountable hurdle [because] . . . [the court] consider[s] the evidence in the light most favorable to the Government, defer[s] to the credibility determination of the jury, and overturn[s] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a

---

[1] Count I charged Erramilli with violating 18 U.S.C. § 2244(a)(2) for engaging in sexual contact with a person who was incapacitated at the time. The government dismissed count I of the indictment after Victim A testified that she was awake for the contact giving rise to the charge. (Tr. 102–03.)

reasonable doubt.'" *United States* v. *Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999) (quoting *United States* v. *Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)); *see also United States* v. *Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997).

Under Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for [a] new trial rests within the sound discretion of the trial court." *United States* v. *Reed*, 875 F.2d 107, 113 (7th Cir. 1989). The court may grant a new trial "in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights." *United States* v. *Reed*, 986 F.2d 191, 192 (7th Cir. 1993) (citation omitted). Such motions are disfavored and are granted only in extreme cases. *See*, *e.g.*, *United States* v. *Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). To justify a new trial, an evidentiary ruling must be not only error but harmful error. *United States* v. *Owens*, 424 F.3d 649, 653 (7th Cir. 2005) ("[W]hen reviewing evidentiary errors, we will only reverse and order a new trial provided that the improper admission was not harmless, which is to say 'only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice.'") (quoting *United States* v. *Hernandez*, 330 F.3d 964, 969 (7th Cir. 2003)). In deciding whether a new trial should be granted under Rule 33, the court "may properly consider the credibility of the witnesses, and may grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States* v. *Washington*, 184 F.3d 653, 657 (7th Cir. 1999).

# BACKGROUND

On July 14, 2011, Victim A and her husband boarded Southwest Airlines Flight 1227 in Las Vegas, Nevada that was bound for Chicago, Illinois.  They both sat in Row 19.  Victim A sat in the seat closest to the window and her husband situated himself in the aisle seat.  Erramilli was the last person to board the plane.  The only seat left was between Victim A and her husband, which is where the flight attendant seated Erramilli.  Victim A did not know Erramilli before boarding the flight.

Victim A testified at trial and detailed how she felt something touch her leg on three separate occasions during the flight.  Initially, Victim A was asleep on the flight and remembered feeling something brush her leg.  She thought that a paper Erramilli had been holding may have touched her leg and did not say anything after the first contact.  Victim A moved closer to the window and fell back asleep.  Victim A crossed her left leg over her right leg.  Victim A next felt pressure on the middle of her left upper thigh.  It felt like someone was kneading her leg.  Victim A turned and believed she may have hit Erramilli's knee after the second contact.  Erramilli then crossed his arms and placed his head down on the tray table in front of his seat.

Victim A recalled that the pilot announced that they would be arriving in Chicago in about 35 minutes.  She initially lay back and closed her eyes, then opened them and saw that Erramilli had positioned his legs toward her.  Victim A saw Erramilli reading a newspaper and then noticed that he had placed his hand underneath her shorts and started rubbing her leg.  Victim A described how Erramilli's thumb was on the middle and inner portion of her leg and that his four fingers were on the outer portion of her leg.  Erramilli moved his hand up Victim

A's thigh as he was squeezing her leg. She felt pressure on her inner and outer thigh and described how Erramilli was kneading and fondling her thigh. Victim A responded by calling Erramilli a "pig" and a "pervert" and then struck him. (Tr. 59–61.) Erramilli asked that Victim A not contact the authorities and offered to resolve the conflict as a civil matter. Victim A told Erramilli that he should not have touched her, to which Erramilli stated according to Victim A, "Well, you liked it." (Tr. 61.) Victim A additionally demonstrated for the jury the manner in which Erramilli touched her for the third time on the flight. Victim A (playing the role of Erramilli) reenacted the manner in which Erramilli touched her on the flight with an Assistant United States Attorney (playing the role of Victim A).

Moreover, Victim's A husband did not see Erramilli touch Victim A during the flight, although he recalled Victim A's yelling and hitting Erramilli. Victim A's husband further recalled Erramilli, who was sweating profusely at the time, telling his wife, "You didn't stop me, I thought you liked it." (Tr. 110.) Southwest Airlines flight attendant Karla Shaw recalled that Victim A was upset after the plane landed and that Erramilli was sweating. Shaw also heard Erramilli ask Victim A if they could resolve the incident amongst themselves. Melissa Manser, Jason Self, and Ted Marth, all passengers on the flight, heard Victim A yelling on the flight and remembered Erramilli sweating.

After disembarking the flight in Chicago, Victim A spoke with Chicago police officers Frank Balestri and Donald Barrett at the gate area. Victim A recounted where and how Erramilli touched her and stated that Erramilli had touched her on the inner thigh. At trial, Officer Balestri demonstrated to the jury the manner in which Victim A described the contact after the flight, specifically that Erramilli had rubbed the inside of Victim A's thigh with his fingers. Officer

Balestri testified that Erramilli was sweating and had offered to settle the matter in a civil forum. Officer Barrett testified that Victim A told him that Erramilli had touched her inner thigh. Officer Barrett then demonstrated for the jury where on her leg Victim A stated that the contact occurred by placing his left hand on his thigh with his thumb pointing to the inside. After speaking with the officers, Victim A signed a criminal complaint prepared by the officers charging Erramilli with battery under Illinois law. The criminal complaint did not allege that the contact took place on Victim A's inner thigh.

Southwest Airlines flight attendant Lyda Grawn was with Victim A, Erramilli, and Officers Balestri and Barrett after they debarked the flight. On direct examination, Grawn remembered Victim A's speaking with the officers and rubbing her leg to show them how Erramilli touched her. On cross-examination, Grawn testified that she was not present for Victim A's demonstration to the officers. She could not recall where on her leg Victim A told the officers Erramilli touched her. After being shown a report containing her prior statement to a defense investigator, Grawn testified that Victim A had demonstrated that the contact took place on the outer portion of her leg. Grawn also testified on recross that she believed that the contact was not sexual in nature.

During the trial, the government presented testimony from two other women who Erramilli had touched during separate flights in the past. Victim B testified that, in 1999 on a flight from Detroit to Chicago, she was sitting in a seat in front of Erramilli. On three separate occasions, she felt Erramilli touch and make contact with the side of her breast. Erramilli later pleaded guilty in the Circuit Court of Cook County to battery for knowingly making unlawful physical contact with Victim B. In 2002, on a flight from San Jose to Detroit, Erramilli touched

another woman's breast.  During that flight, Erramilli sat in a row behind Victim C and reached

forward to touch her breast.  FBI Special Agent Booth interviewed Erramilli after Victim C filed

a complaint and testified at trial.[2]  Erramilli told Agent Booth that after touching Victim C, "he

was excited, and said he had a little bit of an erection."  (Tr. 203.)  In connection with the

incident with Victim C, Erramilli pleaded guilty in the United States District Court for the

Eastern District of Michigan to abusive sexual contact for knowingly engaging in sexual contact

with Victim C without her permission.

## ANALYSIS

### I.      Motion for Judgment of Acquittal

The jury returned a verdict against Erramilli on count II of the indictment, which charged

him with abusive sexual contact for "knowingly engag[ing] in sexual contact with another

person without that other person's permission[.]"  18 U.S.C. § 2244(b).  "Sexual contact" is "the

intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast,

inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or

arouse or gratify the sexual desire of any person[.]"  18 U.S.C. § 2246(3).  Erramilli contends

that his conviction rests on inadequate evidence.  Namely, he argues that (1) Victim A's

demonstration showing only that his thumb tip made fleeting contact with her mid-thigh is not

sufficient to sustain his conviction; (2) the Chicago police officers contradicted Victim A's

testimony on where the contact on her leg occurred; (3) Lyda Grawn also contradicted Victim

A's testimony regarding where Erramilli touched Victim A's leg; (4) there was no evidence that

---

[2] Victim C did not testify at trial.  Rather, Agent Booth testified about the encounter between Erramilli and Victim C.

Erramilli was sexually aroused or intended to sexually gratify his desires by placing his thumb tip on Victim A's leg; (5) the government impermissibly relied upon Erramilli's prior convictions for sexual contact to prove its case; and (6) the court should enter a judgment on the lesser included offense of simple assault.

First, Erramilli faces an uphill climb in asking the court to set aside the jury's verdict. As on appeal, "this Court construes all evidence in the light most favorable to the government, defers to the jury in assessing credibility, and resolves all conflicts in the evidence in favor of the government." *United States* v. *Bailey*, 510 F.3d 726, 733 (7th Cir. 2007). The government presented evidence, while conflicting in some respects, that Erramilli's contact with Victim A was more than a fleeting tip of the thumb on her thigh. Victim A so testified and demonstrated how Erramilli touched her on the inner thigh. Officers Barrett and Balestri corroborated Victim A, testifying that Victim A told them shortly afterwards that Erramilli touched her on the inner thigh during the flight.

Erramilli also argues that the evidence about where the contact took place was unclear. Relying on Victim A's in-court reenactment, Erramilli argues that demonstration revealed that the contact was on Victim A's outer thigh. Defense counsel made a record of the demonstration stating that "running down the midline of the crease in the pants [of the Assistant United States Attorney] was the thumb of [Victim A]." (Tr. 63–64.) The government, however, disputes Erramilli's recollection of the in-court demonstration and also made a record of the contact noting that "the witness has taken her left hand and rubbed it up the [Assistant United States Attorney's] left thigh, starting in the area of the knee, and moving up the thigh." (Tr. 63.) The court did not adopt either representation as it was not asked to do so. These statements by

counsel were not evidence. Defense counsel also forcefully cross-examined Victim A and argued his theory during summation. Ultimately, it was for the jury to decide whether Victim A's testimony was incredible or whether the in-court demonstration was contradictory. The court will not disturb the jury's finding. *See United States* v. *Lewis*, 641 F.3d 773, 780 (7th Cir. 2011) ("[I]t is well settled that credibility assessments are the province of the jury."); *United States* v. *Roberts*, 534 F.3d 560, 569 (7th Cir. 2008) ("We have noted that it is not our role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations.") (internal quotation marks omitted); *United States* v. *Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) ("[W]e reverse [credibility] determinations on appeal only under exceptional circumstances, such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.") (internal quotations marks omitted).

Second, Erramilli argues that Officers Balestri and Barrett contradicted Victim A's testimony regarding how the contact occurred. Officers Balestri and Barrett both testified that Victim A demonstrated that Erramilli touched the inside of her thigh with his forefingers.[3] Victim A testified that the Erramilli touched her inner thigh with his thumb. In addition, Erramilli argues that Grawn also provided inconsistent testimony. Grawn remembered Victim A's stating that Erramilli touched her on the outer thigh. The jury heard the varying testimony and was able to credit and reject the testimony in reaching its conclusion. For the reasons stated above, the court will not disturb the jury's verdict on this basis. *See*, *e.g.*, *United States* v.

---

[3] Defense counsel also noted for the record that Officer Balestri used his right hand during the reenactment. Victim A testified that Erramilli touched her with his left hand.

*Alcantar*, 83 F.3d 185, 189 (7th Cir. 1996) ("Testimony is not incredible as a matter of law . . . only because the witness may have been impeached by certain discrepancies in his story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government.").

Third, Erramilli argues that there was no evidence that he was sexually aroused or intended to sexually gratify his desires by placing his thumb tip on Victim A's leg. He contends that the jury impermissibly relied on his prior convictions of sexual conduct and highlights Grawn's testimony that she did not believe that the touching was of a sexual nature.[4] Victim A's testimony, however, provided the jury with a sufficient basis to conclude that Erramilli touched her with the requisite intent. Namely, Erramilli placing his hand underneath Victim A's shorts, touching her skin, running his hand up Victim A's leg, and squeezing her inner thigh is indicative of the sexual nature of the contact. Indeed, Victim A described how Erramilli was "kneading" and "fondling" her thigh then told her that "you liked it" after she confronted him. (Tr. 59, 61.) The extraordinary nature of the contact presented a situation in which the jury could have reasonably inferred that Erramilli touched Victim A's thigh with the requisite intent. *Cf. Howard* v. *Werlinger*, 403 F. App'x 776, 778 (3rd Cir. 2010) (federal inmate petitioner's placing his hands between the legs of his female visitor falls under 18 U.S.C. § 2246(3)'s definition of sexual contact); *United States* v. *Cohen*, No. 07-5561-cr, 2008 WL 5120669, at *1 (2d Cir. Dec 8, 2008) (affirming conviction under 18 U.S.C. § 2244(b) based on defendant

---

[4] Erramilli argues that the jury would have acquitted him had the prior convictions not been admitted into evidence. As discussed in more detail, *infra* in Part II.C, admission of the prior convictions was also proper. This evidence was admissible under Federal Rule of Evidence 413, which allows the jury to consider it "on any matter to which it is relevant." Fed. R. Evid. 413(a). Regardless of the prior acts evidence admitted under Rule 413, the jury was presented with substantial evidence on which they could have convicted Erramilli for the charged incident in this case.

touching victim's groin and inner thigh); *United States* v. *Lee*, 232 F.3d 653, 655 (8th Cir. 2000) (concluding that "[t]he absence of such evidence [of intent], however, is not a defect in the government's case where the contact alleged is so clearly sexual that the jury may infer the defendant's intent.").

Last, Erramilli requests that the court vacate the jury's conviction on count II for abusive sexual contact and enter judgment on the lesser included misdemeanor charge of simple assault. The difference between the charges is that simple assault omits the intent to cause sexual arousal element. At Erramilli's request, the court instructed the jury on both abusive sexual contact and simple assault. The jury declined to find Erramilli guilty of simple assault. As previously discussed, the jury could have found that Erramilli acted with the requisite sexual intent. The court declines to vacate the jury's finding and enter judgment on the lesser included offense of simple assault. Accordingly, Erramilli's motion for judgment of acquittal is denied.

## II.     Motion for a New Trial

Erramilli requests a new trial arguing that (1) the government's opening statement was argumentative; (2) the government impermissibly led Victim A during direct examination so that she would testify that contact took place on her inner thigh; (3) the court erred in admitting Erramilli's two prior convictions for sexual offenses under Rule 413; (4) the court erred in admitting Officers Balestri's and Barrett's testimony regarding what Victim A told them after the flight as prior consistent statements; (5) the court erred in admitting Victim A's statements after the contact occurred; (6) the court erred in instructing the jury; and (7) the evidence was insufficient to sustain his conviction. Erramilli also raises numerous issues that the court has

previously ruled upon and the reasons for those rulings have been stated on the record.[5]  Insofar

as any of those issues are not addressed in this ruling, the court stands on its previous statements

of reasons for its rulings, either on the record in open court or its written opinions.

### A.    The Government's Opening Statement

Erramilli contends that the government impermissibly argued during its opening

statement; however, he does not point to specific examples.  During the government's opening

statement, Erramilli's counsel lodged three objections, all of which the court sustained.[6]  In

determining whether conduct rises to the level of prosecutorial misconduct to warrant a new

trial, the following two inquiries are made: whether the conduct was improper and, if so, whether

---

[5]  Erramilli argues that the court erred in denying his request for a bill of particulars and denying his motion for a subpoena seeking depositions given in a civil case by Victim A and her treating physician, Victim A's medical records, and a HIPAA order covering the medical records and depositions. Erramilli also argues that the court erred in limiting cross-examination of Victim A regarding her use of medication around the time of the June 14, 2011 flight.  The court stands by its prior rulings on these issues.  *See* Dkts. 69, 73, 77.  Erramilli also argues that the court erred in granting the government's motions *in limine* and denying his pre-trial motions and motions *in limine*.  The court granted Erramilli's two motions *in limine*.  With regard to the other issues, the court stands by all of its pre-trial rulings.

[6]  Erramilli objected to the following comments during the government's opening,

Flying gives him an opportunity, an opening, the chance to be in close proximity to women.
DEFENSE COUNSEL: Judge, objection, argument.
THE COURT: Sustained.  (Tr. 25.)
\*\*\*
When you hear what happened in this case, when you hear from [Victim A], when you hear his reaction, when he touched her, [Victim A] started yelling –
DEFENSE COUNSEL: Objection.  Argument again, Judge.
THE COURT: Sustained.  (Tr. 28.)
\*\*\*
You'll hear that he started begging [Victim A and her husband], let's handle this as a civil matter, essentially offering to pay them off.
DEFENSE COUNSEL: Objection.
THE COURT: Sustained.  (Tr 29.)

it prejudiced the defendant by depriving him of a fair trial. *United States* v. *Bowman*, 353 F.3d 546, 550 (7th Cir. 2003); *United States* v. *Jones*, 188 F.3d 773, 778 (7th Cir. 1999).

Erramilli does not argue how the government's opening statement rose to the level of improper conduct. It is true that on a couple of occasions noted in the margin, the opening statement took a step across the border into argument but, because the jury was notified that such argument was objectionable, Erramilli was not prejudiced. In addition, the court instructed the jury that the parties' opening statements were not evidence. (Tr. 18, 24). Erramilli is not entitled to a new trial on this point. *See United States* v. *Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003) ("The government's comments neither denied the defendant a fair trial nor changed the outcome.").

### B.    The Government's Direct Examination of Victim A

Erramilli argues that the government's direct of examination of Victim A led her to the conclusion that the contact occurred on her inner thigh. Erramilli highlights certain questions asked by the government that were impermissibly leading, such as

| | |
|---|---|
| AUSA: | And did you feel pressure on your inner thigh? |
| VICTIM A: | Yes. |
| DEFENSE COUNSEL: | Objection, leading. |
| THE COURT: | Sustained. |
| AUSA: | Where on your leg did you feel pressure? |
| VICTIM A: | On my inner thigh, on my outer thigh. He was just like kneading it, fondling it. |
| *** | |
| AUSA: | Now, [Victim A], did the defendant's hand cross over the midline of your thigh to the inner thigh? |
| DEFENSE COUNSEL: | Objection, Judge, leading. She can describe the event without the prosecutor telling her what the event was. |
| THE COURT: | Sustained. |

***

| | |
|---|---|
| AUSA: | And when you demonstrated for the officers, did that include your inner thigh? |
| DEFENSE COUNSEL: | Objection, leading, Judge. This is the second time leading on the area of the body. The witness has - - can - - |
| THE COURT: | You can ask the question without leading. |

\*\*\*

| | |
|---|---|
| AUSA: | What part of your leg did you tell the officers the defendant touched? |
| VICTIM A: | I told the officers and I showed the officer what he was doing. And they then said, so he was on your left leg? And I said, yes. |
| AUSA: | Now what parts of your thigh did you show and tell them about? |
| VICTIM A: | My left thigh - - |
| AUSA: | Did that include only your outer thigh? |
| VICTIM A: | No. |
| AUSA: | What else did it include? |
| VICTIM A: | My inner thigh. |

(Tr. 59, 64, 94–95.)

A leading question is one which suggests an answer. *See United States* v. *Cephus*, 684 F.3d 703, 707 (7th Cir. 2012). Rule 611(c) provides that "[l]eading questions should not be used on direct examination except as be necessary to develop the witness's testimony," or "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c). Here, the government improperly asked leading questions regarding where Erramilli touched Victim A. Still, any error in posing these questions was harmless. While difficult to "unring the bell," the government properly rephrased the questions after Erramilli's objections. *See United States* v. *Meza-Urtado*, 351 F.3d 301, 303 (7th Cir. 2003). The government also elicited additional evidence separate from Victim A's testimony that the contact occurred on her inner thigh. *Cf., United States* v. *Durham*, 645 F.3d 883, 891 (7th Cir. 2011) (noting that "even if there may be the rare case in which leading questions result

13

in prejudice to a defendant, this is not that case" as the Special Agent's testimony was corroborated with his typed report concerning the defendant's post-arrest interview).

Accordingly, Erramilli is not entitled to a new trial based on leading questions during Victim A's direct examination.[7]

### C.    The Prior Convictions

Erramilli argues that the court erred in admitting his prior convictions for sexual offenses. In its prior ruling, the court found that the prior convictions from 1999 and 2002 were admissible under Rule 413.  (Dkt. 32.)  In addition, the court determined that any unfair prejudice associated with these prior convictions did not outweigh their probative value.  (*Id*.)  Erramilli now argues that the evidence elicited at trial showed that the contact with Victim A was strikingly dissimilar from the other convictions, and the admission of the prior convictions resulted in unfair prejudice to Erramilli.[8]

Rule 413 provides that the court may admit evidence that the defendant committed any other sexual assault when the defendant is accused of sexual assault in a criminal case and creates an exception to Rule 404(b)'s general prohibition against "propensity evidence."  Fed. R.

---

[7] Erramilli's reliance on *United States* v. *Meeker*, 558 F.2d 387 (7th Cir. 1977) is unavailing.  In *Meeker*, the defendant had been charged with failing to file an income tax return.  *Id*. at 388.  During the redirect examination of an IRS agent, the prosecutor asked the agent that "[the defendant']s real method of accounting was not to report income, wasn't it."  *Id*. at 389.  The Seventh Circuit held that this question was an "inflammatory statement on the part of a prosecutor . . . that contained an implication that the defendant was guilty of engaging in the conduct for which he was on trial."  *Id*.  The prosecutor also asked leading questions to three other witnesses alluding to matters that were not supported by the evidence, that were not relevant to the case, and that supported an impermissible inference of guilt.  *Id*. at 388–89.  The Seventh Circuit ultimately reversed and remanded for a new trial.  *Id*. at 390.  The three leading questions during Victim A's direct examination do not rise to the level of misconduct in *Meeker*.

[8] Erramilli also argues that the court's pre-trial ruling was erroneous.  The court stands by the pre-trial ruling admitting the prior convictions under Rule 413.

Evid. 413(a); *United States* v. *Hawpetoss*, 478 F.3d 820, 825 (7th Cir. 2007); *United States* v. *Julian*, 427 F.3d 471, 486 (7th Cir. 2005). The purpose of the rule is to allow the court to admit evidence of other assaults to demonstrate the defendant's propensity to engage in the offense of sexual assault. *See United States* v. *Rogers*, 587 F.3d 816, 822 (7th Cir. 2009). The court must still apply Rule 403 to protect a defendant from being convicted on an improper basis other than propensity, such as passion or bias. *Id*.

Erramilli argues that the evidence at trial showed that his thumb made fleeting contact with the top portion of Victim A's thigh. Because this contact was not of a sexual nature, argues Erramilli, Rule 413 was inapplicable and the prior instances should not have been admitted. Rule 413 applies when a defendant is charged with sexual assault in a criminal case and the rule defines sexual assault as any conduct prohibited by 18 U.S.C. chapter 109A, which includes violations of 18 U.S.C. § 2244(b). The jury heard testimony that belies Erramilli's characterization of the contact. Victim A testified that Erramilli rubbed her thigh and moved his hand upward on her thigh while "kneading" or "fondling" her leg. Such contact falls well within the rubric of "sexual contact" as defined by 18 U.S.C. § 2246(3) thus triggering Rule 413.

Erramilli next contends that the evidence offered a trial differed from the government's proffer in support of introducing the Rule 413 material, which warranted exclusion. Specifically, Erramilli argues that (1) there was no testimony that Erramilli sought to settle the prior instances "civilly"; (2) the evidence showed that Victim A was awake at the time of the contact unlike Victim B and Victim C; (3) Erramilli only made fleeting contact with Victim A's thigh with the tip of this thumb while he touched Victim B and Victim C's breasts; (4) there was no evidence

that he touched Victim A in a furtive manner and Victim A's husband was seated next to him; and (5) there was no evidence that he was sexually aroused.

The government notes that it did not present evidence in the prior instances about how Erramilli chose not to settle the matters in a civil fashion out of an abundance of caution. Indeed, the court's pre-trial ruling instructed the government to limit its presentation of this evidence,

> The court emphasizes, therefore, that the proper focus of the trial must be the underlying conduct that supports the instant offense, rather than the prior offenses. Accordingly, the government must limit its presentation to evidence that is necessary to convey the essential facts underlying the two prior offenses. The government should attempt to limit emotional testimony from the prior victims.

(Dkt. 32.) The government heeded this court's instruction and did not present evidence regarding how Erramilli attempted to resolve the two prior instances short of criminal charges. This fact does not render the prior instances dissimilar for purposes of admissibility.

Erramilli's other arguments regarding the dissimilarities between his contact with Victim A and his contact with Victim B and Victim C ignore the striking similarities between all three contacts. All three occurred on airplanes with female passengers whom Erramilli did not know. That Victim B and Victim C were asleep while Victim A was not, or that Erramilli touched Victim A's thigh while her husband sat next to him, are minor differences when compared to the universal similarities of the three contacts. Erramilli also contends that there was no evidence that he was sexually aroused during the incident with Victim A; however, the jury was free to find otherwise based on Victim A's testimony describing how Erramilli touched Victim A's leg and his comment afterwards that she "liked it." The evidence presented at trial thus did nothing to change the admissibility of the prior incidents.

Last, Erramilli argues that the evidence of prior conduct was inadmissible under Rule 403 and that the jury improperly used evidence of the prior instances to convict him of the present charge. Rule 403 safeguards admissible evidence under Rule 413 when its admission would be unfairly prejudicial. *See Rogers*, 587 F.3d at 822. Here, the prior conduct was relevant to the intent element of the charged crime. The government adhered to the court's pre-trial ruling and minimized any emotional testimony in connection with the two prior instances. The court also instructed the jury regarding the permissible inferences that could be drawn based on the prior conduct. (Tr. 306.) After carefully weighing Rule 403's considerations, the court adheres to its prior ruling and finds that the unfair prejudice associated with the prior convictions did not warrant their exclusion.[9]

### D.     Testimony Regarding Victim A's Reenactment of the Contact to Officers Balestri and Barrett

Erramilli argues that the court erred in allowing Officers Balestri and Barrett to testify regarding Victim A's reenactment of Erramilli's contact with her after she disembarked from the airplane. The government contends that this testimony was admissible as a prior consistent statement under Rule 801(d)(1)(B).

Rule 801(d)(1)(B) "defines prior consistent statements as nonhearsay only if they are offered to rebut a charge of 'recent fabrication or improper influence or motive.'" *Tome* v. *United States*, 513 U.S. 150, 157, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995) (quoting Fed. R. Evid. 801(d)(1)(B)). Prior consistent statements are admissible if "(1) the declarant testifies at trial and is subject to cross-examination; (2) his prior statement is indeed consistent with his trial

---

[9] Erramilli also argues that the court should have precluded Agent Booth from testifying about Erramilli's statement that he had an "erection" after touching Victim C. This evidence was properly admitted under Rule 413 to show intent.

testimony; (3) the statement is offered to rebut an explicit or implicit accusation of recent fabrication; and (4) the statement was made before the declarant had a motive to fabricate." *United States* v. *Alviar*, 573 F.3d 526, 541 (7th Cir. 2009). Here, the first two elements are easily met as Victim A testified at trial and her prior statements to Officers Balestri and Barrett were consistent with her trial testimony that Erramilli touched her inner thigh.

As to the third element, the government argues that the officers' statements were admissible to rebut an implied motive to fabricate on Victim A's behalf. The defense admitted into evidence the criminal complaint signed by Victim A shortly after disembarking from the flight. The criminal complaint charged Erramilli with battery under Illinois state law; however, it made no mention of Victim A's allegation that Erramilli touched her inner thigh. Defense counsel cross-examined Victim A on this omission and then questioned Victim A about whether she told the FBI that Erramilli touched her inner thigh. (Tr. 76, 86–87.) Defense counsel also cross-examined Officers Balestri and Barrett regarding how the police reports did not include that the contact occurred on Victim A's inner thigh. (Tr. 171–72, 182–84.)

The insinuation was that Victim A provided additional information to the FBI that she did not provide to Officers Balestri and Barrett (*i.e.*, that Erramilli touched her inner thigh) to support the federal charges. Erramilli noted the absence of the allegation in the misdemeanor complaint about contact with her inner thigh and then questioned Victim A about her subsequent meeting with the FBI. Officers Balestri and Barrett's testimony was admissible to show that Victim A told them before filling out the misdemeanor complaint and meeting with the FBI that Erramilli had touched her inner thigh. In addition, the fourth element of the test is satisfied because Victim A made the statement to the officers before the motive to fabricate arose (*i.e.*,

after her initial meeting with the FBI).  Officers Balestri and Barrett's reenactment of what Victim A told them before she met with the FBI was thus properly admitted as a prior consistent statement.

### E.    Victim's A Statements to Erramilli Shortly after the Contact

Erramilli also contends that the court erred in admitting statements that Victim A made to him shortly after the contact took place.  The government argues that these statements were admissible as non-hearsay as they were offered to show that the statements were made, and alternatively, they were admissible as excited utterances under Rule 803(2).  The government identifies three statements about which Victim A testified at trial shortly after the contact. Immediately after the third contact, Victim A testified that she called Erramilli a "pig" and/or "pervert," told him "You know what you were doing," and stated, "You shouldn't have touched me."  (Tr. 59, 60, 66.)  These statements were all admissible as excited utterances under Rule 803(2) relevant to the issue of whether the contact was without Victim A's permission.  *See* Fed. R. Evid. 803(2); *United States* v. *Vargas*, 689 F.3d 867, 876–77 (7th Cir. 2012).

### F.    Jury Instructions

Erramilli argues that the court erred in denying his modified jury instruction on his prior convictions and giving the modified instruction proposed by the government on this issue.  The court instructed the jury using the government's modified version of Seventh Circuit Criminal Pattern Instruction 3.11,

> You have heard testimony that the defendant committed crimes other tha[n] the ones charged in the indictment.  Before using this evidence, you must decide whether it is more likely than not that the defendant did the crimes that are not charged in the indictment.  If you decide that he did, then you may consider this evidence for the following purposes: Motive, intent, knowledge, absence of mistake, lack of accident,

and propensity to commit sexual assault. Keep in mind that the defendant is on trial
here for abusive sexual contact, not for the other crimes.

(Tr. 306.) Erramilli argues that the court should have additionally instructed the jury that they

were not to consider Rule 413 evidence for any other purpose. This language is present in

Seventh Circuit Criminal Pattern Instruction 3.11.[10] The Committee Comment to the instruction

provides that "[t]his instruction does not apply to evidence admitted pursuant to Fed. R. Evid.

413 or 414, under which a prior act of sexual assault or child molestation by the defendant may

be considered for 'its bearing on any matter to which it is relevant.'" (Seventh Circuit Criminal

Pattern Instruction 3.11, Committee Comment.) The Committee Comment thus provides that

when the prior conduct is admissible under Rule 413, as opposed to Rule 404(b), the phrase

instructing the jury that they are not to consider the evidence for any other purpose is not

warranted as Rule 413 evidence is admissible for propensity purposes. *See Rogers*, 587 F.3d at

822–23. Thus, the court did not err in refusing to give Erramilli's proposed instruction and

giving the government's modified version of Seventh Circuit Criminal Pattern Instruction 3.11.

Erramilli also argues that the court erred in denying his proposed instruction on the

elements of abusive sexual contact without permission. The court instructed the jury according

---

[10] Seventh Circuit Criminal Pattern Instruction 3.11 provides,

You have heard [testimony; evidence] that the defendant committed [crimes; acts; wrongs]
other than the ones charged in the indictment. Before using this evidence, you must decide
whether it is more likely than not that the defendant did the [crimes; acts; wrongs] that are
not charged in the indictment. If you decide that he did, then you may consider this evidence
to help you decide [describe purpose for which other act evidence was admitted, *e.g.* the
defendant's intent to distribute narcotics, absence of mistake in dealing with the alleged
victim, etc.]. You may not consider it for any other purpose. Keep in mind that the defendant
is on trial here for [describe charge(s) in indictment], not for the other [crimes; acts; wrongs].

(Seventh Circuit Criminal Pattern Instruction 3.11.)

to the Seventh Circuit Pattern Criminal Instruction on abusive sexual contact without permission as follows:

> In order for you to find the defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt. First, the defendant knowingly had sexual contact with [Victim A] in the special aircraft jurisdiction of the United States; and, second, that the sexual contact with without [Victim A's] permission.

(Tr. 307.) Erramilli argues that the court should have additionally instructed the jury that (1) the sexual contact occurred on the inner thigh of Victim A; and (2) that Erramilli knew that the contact was without Victim A's permission. The Seventh Circuit Pattern Criminal instruction, however, does not include either of Erramilli's proposed additions.[11] There is no requirement detailing the location of the sexual contact. In any event, the court instructed the jury that sexual contact means the intentional touching of the inner thigh. (Tr. 308.) There is also no

---

[11] The Seventh Circuit Criminal Pattern Instruction delineating the elements for abusive sexual contact without permission provides,

> [The indictment charges the defendant[s] with; Count[s] __ of the indictment charge[s] the defendant[s] with] abusive sexual contact. In order for you to find [a; the] defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:
>
> 1. The defendant knowingly had sexual contact with [name of victim] at [name of institution], and
>
> 2. The sexual contact was without [name of victim]'s permission.
>
> If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt [as to the charge you are considering], then you should find the defendant guilty [of that charge]. If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt [as to the charge you are considering], then you should find the defendant not guilty [of that charge].

Seventh Circuit Criminal Pattern Instruction on 18 U.S.C. § 2244(b), Abusive Sexual Contact Without Permission - Elements.

requirement in the Seventh Circuit Pattern Criminal Instruction that the government prove that Erramilli knew that the contact took place without Victim A's permission.[12]  The court thus did not err in giving this instruction.

### G.    Sufficiency of the Evidence

Erramilli argues that there was insufficient evidence to support his conviction.  This argument mirrors Erramilli's sufficiency of the evidence argument raised in his motion for acquittal.  Considering the evidence presented at trial, the court declines to find that the jury's conclusion was against the manifest weight of the evidence.  *See United States* v. *Hassebrock*, 663 F.3d 906, 920 (7th Cir. 2011) ("A motion for a new trial that is based on the sufficiency of the evidence should be granted only if the verdict is against the manifest weight of the evidence.") (internal quotation marks omitted); *Washington*, 184 F.3d at 657 ("[T]he court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses.").

---

[12]  In his proposed jury instructions and his response to the objections to Erramilli's proposed jury instructions (dkts. 63, 75), Erramilli relied on the Seventh Circuit's opinion in *United States* v. *Peters*, 227 F.3d 963 (7th Cir. 2002), in arguing that the court should have instructed the jury that the sexual contact occurred on the inner thigh and that Erramilli knew that the contact was without Victim A's permission.  The elements instruction for the offense in *Peters* added a knowledge requirement that is not included in the Seventh Circuit Criminal Pattern Instruction.  In *Peters*, the defendant was convicted of engaging in a sexual act with a victim who was incapable of declining participation in violation of 18 U.S.C. § 2242(2)(B).  The district court instructed the jury that the government had to prove that the defendant knew that the victim was physically incapable of declining participation.  *Id*. at 966.  The Seventh Circuit reversed the judgment of conviction holding that the government failed to provide sufficient evidence that the victim declined participation and that the defendant knowingly engaged in sexual contact with the victim when she was physically incapable of declining participation in the sexual act.  *Id*. at 967–68.  The Seventh Circuit, however, did not address the propriety of the instruction in reaching its conclusion.  In any event, Erramilli did not argue at trial that he was under a mistaken belief that he acted with Victim A's permission.  The evidence adduced at trial clearly suggested otherwise.  Victim A testified that she did not touch Erramilli in a sexual manner, was not flirting with him, and did not want Erramilli to touch her.  (Tr. 62.)  The court's giving the Seventh Circuit Criminal Pattern Instruction instead of the instruction given in *Peters* was not erroneous.

**CONCLUSION**

Erramilli's motions for judgment of acquittal and for a new trial are denied.


Dated: April 4, 2013                    Enter: _____
                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge